IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AIR LIQUIDE LARGE INDUSTRIES US LP and AIR LIQUIDE USA LLC. <br><br> Plaintiffs <br><br> vs. <br><br> TENASKA POWER SERVICES CO., <br><br> Defendant | CIVIL ACTION NO. 4:21-cv-04129 |

## ORIGINAL COMPLAINT

Plaintiffs Air Liquide Large Industries US LP and Air Liquide USA LLC (collectively, "Plaintiffs" or "Air Liquide") file this Original Complaint against Defendant Tenaska Power Services Co. ("Tenaska"). Air Liquide will show the Court the following:

### SUMMARY OF COMPLAINT

1. This is an action for breach of contract and declaratory relief concerning Tenaska's breach of the Master Power Purchase and Sale Agreement and Cover Sheet effective June 15, 2016 (the "EEI Agreement") and the related Transaction Confirmation between Air Liquide and Tenaska dated August 28, 2020 (the "Confirmation") in connection with Winter Storm Uri. Air Liquide seeks actual damages of $12,028,531.73, interest, costs, fees, and a declaration confirming the interpretation and application of the contracts to the situation described below. The damages arise from Tenaska's improper refusal to pay Electric Reliability Council of Texas (ERCOT) price adders assessed with respect to fixed price transactions for

731709                                          1

Responsive Reserve Service ("RRS") that Tenaska purchased from Air Liquide pursuant to the EEI Agreement and the Confirmation, and for which Tenaska took title to and bore risk of loss for prior to the assessment of the ERCOT price adders.

## PARTIES

2. Air Liquide Large Industries US LP is a Delaware limited partnership with its principal place of business in Harris County, Texas.

3. Air Liquide USA LLC is a Delaware limited liability company with its principal place of business in Harris County, Texas.

4. Tenaska Power Services Co. is a Nebraska corporation with its principal place of business in Omaha, Nebraska that does business in the State of Texas. Tenaska can be served with process by personally serving its registered agent at its registered office as follows:

> Tenaska Power Services Co.
> C/O Corporation Service Company d/b/a
> CSC – Lawyers Incorporating Service Company
> 206 E. 7th Street, Suite 620
> Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Tenaska because Tenaska entered into and performed the agreements at issue in Texas and in this District. Personal jurisdiction also exists upon Tenaska because Tenaska transacted business in Texas with Air Liquide and transacts business more generally in Texas. Furthermore, the damages and injuries from Tenaska's contract breaches occurred in Texas.

6. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Air Liquide and Tenaska are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interests.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

8. This is an action for breach of contract and declaratory relief concerning Tenaska's breach of the Master Power Purchase and Sale Agreement and Cover Sheet effective June 15, 2016 (the "EEI Agreement") and the related Transaction Confirmation between Air Liquide and Tenaska dated August 28, 2020 (the "Confirmation") in connection with Winter Storm Uri. Air Liquide's $12,028,531.73 in damages arise from Tenaska's improper refusal to pay Electric Reliability Council of Texas (ERCOT) price adders assessed with respect to fixed price transactions for Responsive Reserve Service that Tenaska purchases from Air Liquide pursuant to the EEI Agreement and the Confirmation.

**The Relationships of the Parties.**

9. Air Liquide supplies industrial gases and services to various industries, including medical, chemical, and electronic manufacturers; its large industries business line provides oxygen and nitrogen at higher volumes via an extensive pipeline network connected to large industrial facilities such as refineries and petrochemical plants. As one of its large industries facilities is capable of generating power, Air Liquide participates in ERCOT's Load Resource program, which allows

large industrial customers to reduce their consumption of electricity in response to instructions from ERCOT. A Load Resource may provide operating reserves in ERCOT's ancillary services market and receive a payment for making electricity available for curtailment.

10. Load Resources such as Air Liquide may also provide ancillary services to the ERCOT system. Ancillary services in power generation refer to functions that help grid operators maintain a reliable electricity system. Ancillary services maintain the proper flow and direction of electricity, address imbalances between supply and demand, and help the system recover after a power system event.

11. The product Air Liquide provides as a Load Resource is an ancillary service called Responsive Reserve Service ("RRS"). RRS is generally defined as the daily operating reserves that are intended to help restore the frequency of the interconnected transmission system within the first few minutes after the occurrence of an event that causes a significant deviation from the standard frequency. RRS are critical resources ERCOT uses to maintain the integrity of the electric grid and manage its load.

12. Tenaska is one of the largest private energy companies in the country. Tenaska purchases RRS generated by Air Liquide's participation in ERCOT's Load Resource. Air Liquide sells RRS to Tenaska at a fixed price per megawatt basis.

13. The fixed price sales are effected through transaction confirmations executed pursuant to the terms of the EEI Agreement. Under this arrangement, Tenaska takes title to the RRS and bears both the risk and reward from taking the

RRS into the marketplace. As owner of the RRS, Tenaska can elect to bid the RRS into the ERCOT day-ahead market on its own behalf, sell the RRS at a markup to other power marketers for its own benefit, or do nothing at all with it. Pursuant to the EEI Agreement, Tenaska assumes title for the RRS and bears all risk of loss for RRS at the Delivery Point, which is defined in the Confirmation as "[t]he ERCOT Transmission Grid."

**The February 2021 winter storm.**

14. In February 2021, a series of severe winter storms swept across the United States bringing nearly unprecedented below-freezing temperatures and icy conditions to Texas (commonly referred to as "Winter Storm Uri."). Winter Storm Uri lasted approximately a week, blanketing nearly the entire state in arctic-like conditions, and resulting in over 200 deaths.

15. The icy conditions caused mechanical failures in many power generation facilities that supply the state's electrical grid. According to ERCOT, almost half of Texas' power generating capacity was lost during the storm. To prevent complete collapse of the Texas electric grid, ERCOT instituted rolling blackouts leaving millions of Texans without power.

16. In response to Winter Storm Uri, Governor Abbot, the Public Utility Commission of Texas ("PUC"), ERCOT and utility companies requested that Load Resources such as Air Liquide reduce their energy consumption in order to preserve power for the general Texas population. In cooperation with ERCOT in its capacity as a Load Resource, Air Liquide curtailed its energy usage, providing necessary

capacity to keep the grid powered so that some electricity could reach the people of Texas.

17. As frigid conditions blanketed the state, the demand for electricity to keep the populace warm skyrocketed. As demand catapulted, so did energy prices, spiking from pre-storm prices of $50 per megawatt hour to several thousands of dollars per megawatt hour. Amidst the widespread power shortages caused by Winter Storm Uri, the PUC set power prices at the maximum rate, $9,000 per megawatt hour, for several days.

18. While power prices were capped at $9,000 per megawatt hour, the costs for ancillary services soared even higher, exceeding $20,000 per megawatt hour. In order to comply with PUC's $9,000 per megawatt hour maximum, ERCOT increased the real time prices of electricity being sold with price adders (generally "ERCOT Price Adders."). The crux of this dispute is which party should bear the risk for these ERCOT Price Adders.

**The Transactions in Dispute.**

19. Tenaska as "Buyer" and Air Liquide as "Seller" entered into the Confirmation, effective August 28, 2020. The purchase and sale reflected in the Confirmation is expressly governed by the terms of the EEI Agreement. The Confirmation established a fixed price transaction beginning at 1:00 am Central Time on January 1, 2021 and ending at midnight Central Time on December 31, 2021 for Tenaska to purchase 20 megawatts per each hour at $12.85 per megawatt hour for a total of $2,251,320 for the entire year.

20. The Delivery Point plays a pivotal role under the terms of the EEI Agreement signaling the changing of title to the RRS product and, consistent with the fixed price nature of the Confirmation, the location where risk of loss transfers from Air Liquide as seller to Tenaska as buyer. By way of example, section 3.1 of the EEI Agreement provides that "Buyer shall be responsible for any costs or charges imposed on or associated with the Product or its receipt at and from the Delivery Point." Section 10.3 of the EEI Agreement establishes that "[t]itle to and risk of loss related to the Product shall transfer from Seller to Buyer at the Delivery Point." Section 10.4 of the EEI Agreement provides that "[e]ach Party shall indemnify, defend and hold harmless the other Party from and against any Claims arising from or out of any event, circumstance, act or incident first occurring or existing during the period when control and title to Product is vested in such Party as provided in Section 10.3. Each Party shall indemnify, defend and hold harmless the other Party against any Governmental Charges for which such Party is responsible under Article Nine."

21. The "Delivery Point" in the Confirmation is identified as "[t]he ERCOT Transmission Grid." This means that title to and risk of loss for the RRS product transferred from Air Liquide to Tenaska the moment the RRS entered ERCOT's grid. Pursuant to the fixed-price Confirmation, Tenaska would pay $12.85 per megawatt hour transferred through the Delivery Point. Title to the RRS passed well before the assessment of the ERCOT price adders.

22. Once Tenaska took title to (and assumed risk for) the RRS, Tenaska could resell it on ERCOT's day-ahead market or use it as it saw fit. In normal times, this fixed-price arrangement permits Air Liquide to establish a predictable and dependable price and quantity for providing RRS, insulated from market volatility. Similarly, in return for assuming the risk of market fluctuations, Tenaska historically was able to realize significant profits by purchasing RRS for a fixed low price and reselling it on ERCOT's day-ahead market.

23. Tenaska is attempting to avoid losses associated with $12,028,531.73 in ERCOT Price Adders associated with Winter Storm Uri by refusing to acknowledge its responsibility for them and instead passing them back to Air Liquide. However, title to and risk of loss for the RRS already passed to Tenaska before any such ERCOT Price Adders were incurred or became applicable. Despite being presented with a written demand, Tenaska refuses to acknowledge its responsibility for the ERCOT Price Adders.

24. Under Tenaska's heads-I-win-tails-you-lose theory, Tenaska retains the benefit of the Confirmation's fixed-price transaction while Air Liquide bears the risk of ERCOT's Price Adders which were assessed after Tenaska took title to (and risk of loss for) the RRS at the Delivery Point. Tenaska's theory turns the relationship between the Parties on its head. However, Tenaska has no basis for rejecting the amounts owed to Air Liquide or for attempting to pass along the ERCOT Price Adders to Air Liquide. The agreed-to fixed prices in the Confirmation do not include these amounts nor are they billable against Air Liquide under the EEI Agreement. The

agreements make clear that Tenaska bears the risk of loss for the RRS at the Delivery Point, including the ERCOT Price Adders.

### CAUSES OF ACTION

### Breach of Contract

25. Air Liquide incorporates the preceding paragraphs.

26. The EEI Agreement and the Confirmation are valid and enforceable contracts. Air Liquide performed its obligations under each of these agreements. In breach of the terms of those agreements, Tenaska improperly refused responsibility for the ERCOT Price Adders for the RRS which Tenaska purchased, took title, and bore the risk of loss. Tenaska's improper refusal to acknowledge responsibility and payment for the ERCOT Price Adders constitutes a breach of contract.

27. On June 24, 2021, Air Liquide issued a proper notice and demand in association with this breach. Despite receiving this demand, Tenaska refused and continues to refuse to tender the purchase price reflected in the Confirmation and Tenaska refused and continues to refuse to acknowledge that Tenaska properly bears responsibility for the ERCOT Price Adders.

28. Air Liquide has been damaged by Tenaska's breach in the amount that Tenaska properly owes Air Liquide in connection with the fixed-price Confirmation.

29. Air Liquide has performed all conditions precedent to enforcement of the EEI Agreement and Confirmation.

### Declaratory Judgment

30. Air Liquide incorporates the preceding paragraphs.

31. An actual legal and substantial controversy exists between Air Liquide and Tenaska regarding whether, under the EEI Agreement and Confirmation, Tenaska assumed title of and risk for the ERCOT Price Adders associated with Winter Storm Uri.

32. Under the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code §§ 37.001-37.011, Air Liquide seeks a declaratory judgment as to the parties' rights and obligations under these agreements, including a declaration that Tenaska is responsible for the ERCOT Price Adders associated with Winter Storm Uri.

33. Air Liquide also seeks attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

## JURY DEMAND

34. Air Liquide demands a trial by jury. The jury fee is paid with the filing of this petition.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Air Liquide respectfully requests that the Court grant judgment in their favor and against Tenaska for:

1) Actual damages;

2) A declaratory judgment regarding the parties' rights and obligations under the agreements referred to in this Complaint, including a declaration that that Tenaska is responsible for the ERCOT Price Adders associated with Winter Storm Uri;

3) Pre- and post-judgment interest, costs, attorneys' fees; and

4) All other and further relief afforded by law, whether general or special, at law or in equity.

        Respectfully submitted,

        **HALL MAINES LUGRIN, P.C.**

        */s/ William P. Maines*
        William P. Maines
        State Bar No. 12849700
        wmaines@hallmaineslugrin.com
        Jeffrey T. Bentch
        jbentch@hallmaineslugrin.com
        State Bar No. 24055160
        Ellen H. Raine
        eraine@hallmaineslugrin.com
        State Bar No. 24103103
        Williams Tower, 64th Floor
        2800 Post Oak Blvd.
        Houston, Texas 77056-6125
        (713) 871-9000 Telephone
        (713) 871-8962 Facsimile

        **ATTORNEYS FOR PLAINTIFFS**